No. 25-1068, -1070

IN THE

# United States Court of Appeals for the Federal Circuit

JEANINE FRAZIER,

*Claimant-Cross-Appellant*,

*v.*

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS,

*Respondent-Appellant*.

On Appeal from the United States Court of Appeals for Veterans Claims No. 22-4670, Chief Judge Michael P. Allen, Judges Margaret Bartley and Grant C. Jaquith

# PRINCIPAL AND RESPONSE BRIEF OF CLAIMANT-CROSS-APPELLANT JEANINE FRAZIER


Kenneth M. Carpenter
CARPENTER CHARTERED
P.O. Box 2099
Topeka, KS 66601

Melanie L. Bostwick
Anne W. Savin
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 339-8400

Melanie R. Hallums
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

*Counsel for Claimant-Cross-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1068, -1070

**Short Case Caption** Frazier v. Collins

**Filing Party/Entity** Jeanine Frazier

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/21/2025

Signature: /s/ Melanie L. Bostwick

Name: Melanie L. Bostwick

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Jeanine Frazier | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ vi

STATEMENT OF RELATED CASES ........ xiv

INTRODUCTION ........ 1

JURISDICTIONAL STATEMENT ........ 3

STATEMENT OF THE ISSUES ........ 8

STATEMENT OF THE CASE ........ 9

Congress Provides Veterans With Generous Post-Service Benefits That Veterans Obtain By Filing A Claim With VA. ........ 9

Eligible Individuals May File A Freestanding Claim To Recover Unpaid Benefits After A Veteran Dies. ........ 13

Eligible Individuals May Also Substitute As The Claimant In A Deceased Veteran's Pending Claim And Process It To Completion. ........ 18

Mr. Frazier, A Service-Connected Disabled Veteran, Pursues Claims For Additional Benefits. ........ 22

Mr. Frazier's Adult Daughter Substitutes As The Claimant After His Death, And The Board Issues A Mixed Ruling On The Remaining Claims. ........ 27

The Veterans Court Holds That Ms. Frazier May Pursue Her Father's Claims For "Any Benefit," But Limits Her Recovery On Those Claims. ........ 30

SUMMARY OF ARGUMENT ........ 34

STANDARD OF REVIEW ........ 37

ARGUMENT ........ 37

I. The Veterans Court Properly Interpreted 38 U.S.C. § 5121A To Allow Substitution In "A Claim For Any Benefit." ..... 37

A. The plain text of § 5121A allows for substitution in "any" VA benefit claim. ..... 39

B. The Secretary's attempts to avoid the plain meaning of the statute are unavailing. ..... 46

1. Section 5121A's cross-references to § 5121 incorporate only the question of "who" is eligible to substitute, not "what" claims they may pursue. ..... 47

2. A substitute claimant pursues the pending claim—not a new claim under § 5121. ..... 54

3. The purpose and history of § 5121A support a plain-text reading, not the Secretary's misinterpretation. ..... 56

4. VA's regulation and manual cannot overcome the plain statutory text. ..... 65

II. The Veterans Court Erred In Imposing An Atextual Limitation On Recovery For Substitute Claimants Like Ms. Frazier. ..... 68

A. There is no textual basis to limit the amount that any substitute claimant may recover on successful claims. ..... 71

B. The policy concern that drove the Veterans Court's misinterpretation is at best far-fetched and, in all events, cannot limit the statutory text. ..... 79

CONCLUSION ..... 83

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Principi*,
237 F.3d 1368 (Fed. Cir. 2001) .......... 7

*Barma v. Holder*,
640 F.3d 749 (7th Cir. 2011) .......... 49

*Barnhart v. Thomas*,
540 U.S. 20 (2003) .......... 76

*Bd. of Trs. of Bakery Drivers Loc. 550 & Indus. Pension Fund v. Pension Benefit Guar. Corp.*,
136 F.4th 26 (2d Cir. 2025) .......... 48

*Bondi v. VanDerStok*,
604 U.S. ---, 145 S. Ct. 857 (2025) .......... 67

*Bosco v. United States*,
976 F.2d 710 (Fed. Cir. 1992) .......... 83

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) .......... 67

*Breedlove v. Shinseki*,
24 Vet. App. 7 (2010) .......... 19, 59

*United States ex rel. Bryant v. Cmty. Health Sys., Inc.*,
24 F.4th 1024 (6th Cir. 2022) .......... 48

*Consol. Rail Corp. v. Darrone*,
465 U.S. 624 (1984) .......... 50

*Crews v. McDonough*,
63 F.4th 37 (Fed. Cir. 2023) .......... 21, 55, 64

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016) .......... 46, 70

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 64

*Feliciano v. Dep't of Transp.*,
605 U.S. ---, 145 S. Ct. 1284 (2025) .......... 64

*Gonzalez-Gonzalez v. Ashcroft*,
390 F.3d 649 (9th Cir. 2004) .......... 49

*Haines v. West*,
154 F.3d 1298 (Fed. Cir. 1998) .......... 19

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) .......... 43

*Kingdomware Techs., Inc. v. United States*,
579 U.S. 162 (2016) .......... 39

*Landicho v. Brown*,
7 Vet. App. 42 (1994) .......... 18, 19

*Landstar Express Am., Inc. v. Fed. Mar. Comm'n*,
569 F.3d 493 (D.C. Cir. 2009) .......... 76

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 66, 67

*Lynch v. McDonough*,
21 F.4th 776 (Fed. Cir. 2021) .......... 12

*Manhattan Gen. Equip. Co. v. Comm'r*,
297 U.S. 129 (1936) .......... 46, 71

*Martin v. O'Rourke*,
891 F.3d 1338 (Fed. Cir. 2018) .......... 12

*Metro. Area EMS Auth. v. Sec'y of Veterans Affs.*,
122 F.4th 1339 (Fed. Cir. 2024) .......... 43, 46, 71

*Military-Veterans Advocacy v. Sec'y of Veterans Affs.*,
130 F.4th 965 (Fed. Cir. 2025) .......... 81

*N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*,
479 U.S. 6 (1986) .......... 82

*Nat'l Am. Ins. Co. v. United States*,
498 F.3d 1301 (Fed. Cir. 2007) .......... 60

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
583 U.S. 109 (2018) .......... 41, 42

*Orozco v. Garland*,
60 F.4th 684 (D.C. Cir. 2023) .......... 49, 50, 73, 74

*Panama R.R. Co. v. Johnson*,
264 U.S. 375 (1924) .......... 51

*Phillips v. Shinseki*,
581 F.3d 1358 (Fed. Cir. 2009) .......... 54

*Reeves v. Shinseki*,
682 F.3d 988 (Fed. Cir. 2012) .......... 21, 55

*Reliford v. McDonald*,
27 Vet. App. 297 (2015) .......... 55, 59, 60

*Robinson v. McDonough*,
No. 2021-1784, 2022 WL 499845 (Fed. Cir. Feb. 18, 2022) .......... 7

*Rusick v. Gibson*,
760 F.3d 1342 (Fed. Cir. 2014) .......... 58

*Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*,
108 F.4th 1376 (Fed. Cir. 2024) .......... 43

*SAS Inst. Inc. v. Iancu*,
584 U.S. 357 (2018) .......... 39, 40

*Saunders v. Wilkie*,
886 F.3d 1356 (Fed. Cir. 2018) .......... 37

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) .......... 67

*Smith v. Collins*,
133 F.4th 1059 (Fed. Cir. 2025) .................................. 52, 53, 69, 70, 74

*Sucic v. Wilkie*,
921 F.3d 1095 (Fed. Cir. 2019) .......................................................... 59

*Sullivan v. McDonald*,
815 F.3d 786 (Fed. Cir. 2016) ............................................................ 76

*United States v. Alvarez-Sanchez*,
511 U.S. 350 (1994) ............................................................................ 42

*United States v. Gonzales*,
520 U.S. 1 (1997) ................................................................................ 40

*United States v. Palmer*,
16 U.S. 610 (1818) .............................................................................. 41

*United States v. Williams*,
504 U.S. 36 (1992) .............................................................................. 76

*Walters v. Nat'l Ass'n of Radiation Survivors*,
473 U.S. 305 (1985) ............................................................................ 11

*Williams v. Principi*,
275 F.3d 1361 (Fed. Cir. 2002) ..................................................... 4, 5, 8

*Zevalkink v. Brown*,
102 F.3d 1236 (Fed. Cir. 1996) .......................................................... 54

**Statutes**

29 U.S.C. § 794a ....................................................................................... 50

29 U.S.C. § 794d(f)(3) ............................................................................... 49

38 U.S.C. § 101(4)(A) ........................................................................... 18, 59

38 U.S.C. § 101(13) ...................................................................................... 9

38 U.S.C. § 1110 ...................................................................................... 9, 55

38 U.S.C. § 1114 ............................................................................. 10, 56, 61

38 U.S.C. § 1114(*l*) .......... 10, 23
38 U.S.C. § 1114(m) .......... 10, 23
38 U.S.C. § 1114(n) .......... 10
38 U.S.C. § 1114(o) .......... 10
38 U.S.C. § 1114(p) .......... 10
38 U.S.C. § 1114(s) .......... 10, 23
38 U.S.C. § 1115 .......... 61
38 U.S.C. § 1131 .......... 9
38 U.S.C. § 1135 .......... 61
38 U.S.C. § 1310(a) .......... 13
38 U.S.C. § 1513 .......... 10
38 U.S.C. § 1521 .......... 10
38 U.S.C. § 1714 .......... 11
38 U.S.C. § 1717 .......... 11
38 U.S.C. §§ 1802-1838 .......... 13
38 U.S.C. § 1837 .......... 13
38 U.S.C. § 2101 .......... 10
38 U.S.C. § 2101(b) .......... 56
38 U.S.C. § 2101A .......... 10
38 U.S.C. § 3311 .......... 11
38 U.S.C. § 3314 .......... 11
38 U.S.C. § 3315 .......... 11

38 U.S.C. § 3902 .......... 11
38 U.S.C. § 5103A .......... 11
38 U.S.C. § 5104A .......... 12
38 U.S.C. § 5107(b) .......... 12
38 U.S.C. § 5112(b)(1) .......... 13
38 U.S.C. § 5121 .......... *passim*
38 U.S.C. § 5121(a) .......... *passim*
38 U.S.C. § 5121(a)(1) .......... 45
38 U.S.C. § 5121(a)(2) .......... 17, 71, 72
38 U.S.C. § 5121(a)(3) .......... 17, 72
38 U.S.C. § 5121(a)(5) .......... 71
38 U.S.C. § 5121(a)(6) .......... *passim*
38 U.S.C. § 5121A .......... *passim*
38 U.S.C. § 5121A(a) .......... 31
38 U.S.C. § 5121A(a)(1) .......... 20, 40, 47, 55, 71, 73, 74
38 U.S.C. § 5121A(b) .......... 20, 48, 72, 73, 74
38 U.S.C. § 5701(a) .......... 81
38 U.S.C. § 5701(b) .......... 81
38 U.S.C. § 7105 .......... 12
38 U.S.C. § 7252(a) .......... 3, 7
38 U.S.C. § 7266 .......... 12
38 U.S.C. § 7292 .......... 12

38 U.S.C. § 7292(a) .... 4

38 U.S.C. § 7292(c) .... 37

38 U.S.C. § 7292(d)(1) .... 37

Pub. L. No. 85-56, 71 Stat. 83 (1957) .... 15, 16

Pub. L. No. 108-183, 117 Stat. 2651 (2003) .... 17

Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, 122 Stat. 4145 .... 19

**Rules and Regulations**

38 C.F.R. § 1.577 .... 81

38 C.F.R. § 3.103(a) .... 11

38 C.F.R. § 3.155 .... 11

38 C.F.R. § 3.310 .... 23

38 C.F.R. § 3.1000 .... 18

38 C.F.R. § 3.1010(a) .... 30, 46, 65

38 C.F.R. § 3.1010(f)(2) .... 44

38 C.F.R. § 3.1010(f)(3) .... 21, 44

38 C.F.R. § 3.1010(g)(1) .... 21

38 C.F.R. § 3.1010(g)(2) .... 21

38 C.F.R. § 3.1010(g)(3) .... 70

38 C.F.R. § 4.130 .... 22

38 C.F.R. § 17.158(b) .... 62

38 C.F.R. § 36.4402(a)(4) .... 62

79 Fed. Reg. 52977 (Sept. 5, 2014) .... 21, 56

Fed. Cir. R. 40(a)(4) ........ 37, 69

Fed. R. App. P. 4(a)(1)(B) ........ 4

Fed. R. App. P. 4(a)(3) ........ 4

Veterans' Regulation No. 2(a), 2 Fed. Reg. 1836 (Sept. 14, 1937) ........ 14, 15

**Other Authorities**

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1954 (3d ed.) ........ 56

Black's Law Dictionary (12th ed. 2024) ........ 17

H.R. Rep. No. 110-789 (2008) ........ 19, 20, 57, 58

*Helping Those Left Behind: Hearing Before the Subcomm. on Disability Assistance and Memorial Affairs of the H. Comm. on Veterans' Affairs*, 110th Cong. (2007) ....... 20, 57, 58, 62, 75

Hugh B. McClean, *Delay, Deny, Wait Till They Die: Balancing Veterans' Rights and Non-Adversarial Procedures in the VA Disability Benefits System*, 72 SMU L. Rev. 277 (2019) ........ 13

Oxford English Dictionary (3d ed. Mar. 2016) ........ 40

VA Adjudication Procedures Manual, M21-1, Part XI, subpart ii, 3.B.1.a ........ 66

Veterans Court, *Fiscal Year 2024 Annual Report*, https://tinyurl.com/bd7hj985 ........ 12

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding has previously been before this or any other appellate court. Counsel is not aware of any cases in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal, within the meaning of Federal Circuit Rule 47.5(b) and the accompanying practice note.

## INTRODUCTION

For most of the history of the modern veterans benefits system, it has been the general rule that a pending claim dies with the claimant (who is usually, but not always, a veteran). A longstanding but limited exception, currently codified in 38 U.S.C. § 5121, has allowed certain eligible individuals to file a separate claim to recover benefits that had "accrued" and were due but unpaid to the claimant at the time of death. That statute places limits on both the type of benefits recoverable and the amount of some claimants' possible recovery.

Congress changed this state of play in 2008, with the enactment of 38 U.S.C. § 5121A. This statute was part of a broader legislative effort to address significant and persistent delays and other unfairness in the veterans claims system. Section 5121A allows eligible individuals to substitute in a deceased person's pending claim, stepping into the shoes of the original claimant and assuming the same rights he would have had to develop evidence supporting that claim and to recover the benefits he would have received had he lived through the claims process. In caselaw that the Secretary of Veterans Affairs ignores in his brief, both the Court of Appeals for Veterans Claims (the "Veterans

Court") and this Court have recognized that § 5121A marked a foundational change: with the new substitution statute, it is no longer the general rule that a veteran's claim dies with him.

This case involves the proper interpretation of § 5121A, including its relationship with § 5121. There are essentially three questions: *Who* is eligible to substitute in a pending claim when a veteran (or other claimant) dies? *What* type of benefits may a substitute claimant pursue? And *how much* of an ultimate benefits award may the substitute claimant receive? All agree on the answer to the first question: § 5121A incorporates by reference the "who" of § 5121, by permitting substitution of "a living individual who would be eligible to receive accrued benefits" under that statute. But § 5121A does not further incorporate the "what" or the "how much" of § 5121.

The Veterans Court correctly recognized that § 5121A permits substitution in a claim for "any benefit," just as its text states, and is not limited to the periodic monetary benefits available in an accrued benefits claim under § 5121. The Court should affirm that part of the Veterans Court's holding.

But the Veterans Court erred in holding that § 5121A limits certain substitute claimants—those whose eligibility derives from § 5121(a)(6), meaning they bore the expense of the claimant's last sickness and burial—to recover only the dollar amount they would be able to receive in a new claim for accrued benefits. The Veterans Court did not rely on Congress's text for that conclusion. It instead envisioned a hypothetical scenario that might allow exploitation of the substitution statute and concluded that Congress could not have intended that result.

That is not how statutory interpretation should work—particularly not when the Veterans Court's hypothetical is untethered to the real world. Just as § 5121A's incorporation of the "who" of § 5121 does not bring with it the "what," it also does not bring with it the "how much." The Court should reverse that part of the Veterans Court's holding and should overrule its own recent precedent reaching the same flawed interpretation in the context of a mootness challenge.

## JURISDICTIONAL STATEMENT

The Veterans Court had jurisdiction of Ms. Frazier's appeal under 38 U.S.C. § 7252(a). The Veterans Court entered judgment on August

8, 2024. Appx24. The Secretary timely filed a notice of appeal on October 3, 2024. Appx153-154; *see* 38 U.S.C. § 7292(a); Fed. R. App. P. 4(a)(1)(B). Ms. Frazier timely filed a notice of cross-appeal on October 7, 2024. Appx155; *see* 38 U.S.C. § 7292(a); Fed. R. App. P. 4(a)(3). This Court has jurisdiction of both parties' appeals under 38 U.S.C. § 7292(a).

Although the Veterans Court remanded this case to the Board of Veterans' Appeals for further proceedings, both the Secretary's appeal and Ms. Frazier's cross-appeal present reviewable issues under this Court's precedent and do not offend the policy against piecemeal appellate review. The Veterans Court issued two related, definitive interpretations of 38 U.S.C. § 5121A—one of which resulted in invalidating a VA regulation—that will govern this case and others going forward. Those rulings are ripe for this Court's review, and none of the "prudential considerations" of finality that can counsel against review are implicated here. *Williams v. Principi*, 275 F.3d 1361, 1363 (Fed. Cir. 2002).

Under this Court's approach, a remand order is reviewable "if three conditions are satisfied": (1) there is "a clear and final decision of

a legal issue" that is "(a) separate from the remand proceedings," "(b) will directly govern the remand proceedings," or, "(c) if reversed by this [C]ourt, would render the remand proceedings unnecessary"; (2) the resolution of that legal issue "must adversely affect the party seeking review"; and (3) "there must be a substantial risk" that "the remand proceeding may moot the issue." *Id.* at 1364. Those requirements are met here.

First, the Veterans Court clearly and finally decided the legal issues of statutory interpretation presented by both parties on appeal: whether 38 U.S.C. § 5121A permits substitution on a claim to "any benefit" (as its text states) or only to accrued periodic benefits (as the Secretary argues), and whether the statute's cross-references to eligible persons named in 38 U.S.C. § 5121(a) limit the monetary amount recoverable by individuals identified in § 5121(a)(6). Both rulings will also "directly govern" the remand proceedings: The remand proceedings will encompass the pending claims for both periodic and non-periodic benefits, but Ms. Frazier's recovery if she prevails on remand will be

limited to the amount she paid for her father's last sickness and burial expenses. *See* Appx17-18.[1]

Second, the Secretary is adversely affected by the Veterans Court's resolution of the first statutory interpretation issue; that ruling resulted in the invalidation of one of the Secretary's regulations. Appx16. And Ms. Frazier is adversely affected by the Veterans Court's resolution of the second issue, as it puts a cap on the amount of her father's eventual benefits award that she can recover.

Third, there is a substantial risk that the remand proceedings would moot the statutory interpretation issues. As the Secretary notes (OB4), the Board on remand must allow substitution pursuant to the

---

[1] Ms. Frazier disagrees with the Secretary's contention (OB3) that his appeal issue meets the *Williams* (1)(c) criteria of a reversal that "would render the remand proceedings unnecessary." As detailed more fully elsewhere in this brief, Ms. Frazier substituted in her father's pending claims for both periodic monetary benefits as well as the non-periodic benefits that the Secretary argues are out of bounds for substitution. Even if the Secretary's interpretation of the statute were correct, substitution on the periodic benefits claims would still be proper and the remand proceeding on the special monthly compensation claim (as well as the other periodic benefits claims where the Board previously granted relief) would go forward. Nonetheless, Ms. Frazier agrees with the Secretary as to the appealability of the issue he raises to this Court.

Veterans Court's first interpretive ruling, and the Secretary will be unable to appeal from that action. 38 U.S.C. § 7252(a).

Meanwhile, there is at least a substantial risk that the Veterans Court's second ruling will be unreviewable going forward as well. The remand will include further proceedings on (1) the claims Ms. Frazier has already prevailed on; (2) a special monthly compensation claim that the Board denied without adequate reasons and bases; and (3) the claims the Board improperly dismissed as not subject to substitution. Regardless of what happens with the second and third items on remand, Ms. Frazier will be left with a successful claim. But her recovery on that claim will be limited, under the Veterans Court's second interpretive ruling, to the "last sickness and burial" expenses she paid. Ms. Frazier will be harmed by that limitation, but it is at least unclear whether she would be able to appeal, given that the Veterans Court has already resolved that exact issue against her in this very case. *See Allen v. Principi*, 237 F.3d 1368, 1373 (Fed. Cir. 2001) (exercising jurisdiction when it was "possible that we would not have the opportunity to review the statutory interpretation issue later in the litigation"); *see also, e.g.*, *Robinson v. McDonough*, No. 2021-1784, 2022

WL 499845, at *2 (Fed. Cir. Feb. 18, 2022) (discussing "law-of-the-case-doctrine," under which "courts generally refuse to reconsider questions of law and fact that have already been decided during litigation").

To the extent there is any doubt about the finality of the cross-appeal issue, moreover, it would be counter to the policies animating this Court's *Williams* test to review the Secretary's appeal but not Ms. Frazier's. The two issues involve interpretation of the same statutory text and, as the Secretary agrees (OB15-17), involve closely related questions about the interaction between § 5121 and § 5121A. It would not serve "efficient judicial administration" or avoid "piecemeal appellate review," *Williams*, 275 F.3d at 1363-64 (citations omitted), for this Court to review one of those issues now and defer the second to a later day.

## STATEMENT OF THE ISSUES

1. Whether the Veterans Court correctly interpreted 38 U.S.C. § 5121A, which permits substitution in "a claim for any benefit" that is pending when a claimant dies, to apply to "any benefit," not just to claims for periodic monetary benefits.

2. Whether the Veterans Court erred in holding that § 5121A, which permits a substitute claimant to process a pending claim to completion, incorporates the limits on recovery for certain accrued benefits claims brought under § 5121.

## STATEMENT OF THE CASE

### ***Congress Provides Veterans With Generous Post-Service Benefits That Veterans Obtain By Filing A Claim With VA.***

Recognizing the unique sacrifices that veterans make for our country, Congress has long provided them with generous benefits to facilitate their reentry into and success in civilian society. Disability compensation—awarded for disability resulting from a service-connected disease or injury—is among the best-known benefits. 38 U.S.C. §§ 1110, 1131. VA pays disability compensation monthly to eligible veterans to compensate for lasting physical and psychological effects of service that impair a veteran's ability to earn a living and go about their daily life. 38 U.S.C. § 101(13) (defining "compensation" as "a monthly payment made by the Secretary to a veteran because of service-connected disability").

Disability compensation is one type of periodic monetary benefit—that is, a cash benefit that is paid monthly or at some other regular

interval. *See* 38 U.S.C. § 1114 (establishing rates of "monthly compensation" for disability ratings). Other periodic monetary benefits for veterans include pension benefits and special monthly compensation for certain severe disabilities, for necessary attendant care, or for disabilities that render a veteran housebound. *See*, *e.g.*, 38 U.S.C. § 1114(*l*)-(p) (special monthly compensation), § 1114(s) (special monthly compensation for housebound status), § 1513 (pension for veterans 65 years of age and older regardless of disability), § 1521 (pension for wartime veterans who are permanently and totally disabled from non-service-connected disability). These benefits provide ongoing support for veterans' recurring needs.

In addition to periodic monetary benefits, VA also administers non-periodic monetary benefits—cash benefits that are available only once, irregularly, for a limited time, or in a limited amount. These benefits typically support veterans' one-time needs, such as adapting their housing to accommodate their disabilities, pursuing their education, or securing civilian professional credentials. *See*, *e.g.*, 38 U.S.C. §§ 2101, 2101A (providing assistance to acquire or adapt permanent or temporary housing that accommodates a veteran's

disabilities); § 3311 (providing "educational assistance" to post-9/11 veterans); § 3314 (providing "supplemental monetary assistance" of up to $1,200 for academic tutoring); § 3315 (providing up to $2,000 for licensure and certification test fees); §§ 1714, 1717, 3902 (providing assistance in securing adaptive devices and equipment for disabled veterans, such as prosthetics, service dogs, and vehicles).

Whether seeking periodic or non-periodic benefits, a veteran must initiate a claim by filing an application with VA, where it is first processed by adjudicators in a regional office. *See* 38 C.F.R. § 3.155. The process that follows is meant to function with a "high degree of informality and solicitude for the claimant." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 311 (1985). Indeed, claimants are supposed to be able to navigate this "informal and nonadversarial" system without the aid of a lawyer. *Id.* at 323-34. In theory, VA should act in the veteran's interest, guiding him toward an outcome that provides all benefits for which he is eligible under the law. *See*, *e.g.*, 38 U.S.C. § 5103A (obligating VA to assist claimants); 38 C.F.R. § 3.103(a) (stating VA policy "to render a decision which grants every benefit that can be supported in law").

VA must award benefits if the assembled evidence supports the veteran's claim or is in "approximate balance" on any material issue; only when evidence "persuasively favors" the government may VA deny the claim. 38 U.S.C. § 5107(b); *Lynch v. McDonough*, 21 F.4th 776, 781-82 (Fed. Cir. 2021) (en banc). Once VA makes a "finding favorable to the claimant," it binds all VA adjudicators unless rebutted with clear and convincing evidence. 38 U.S.C. § 5104A. A claimant who disagrees with VA's decision may first appeal within the agency to the Board, then may seek judicial review, first in the Veterans Court and then in this Court. 38 U.S.C. §§ 7105, 7266, 7292.

Unfortunately, VA's practices do not fully embody Congress's intended beneficence. VA's claims-processing delays are notorious. *See, e.g.*, *Martin v. O'Rourke*, 891 F.3d 1338, 1349-50 (Fed. Cir. 2018) (Moore, J., concurring). And the rate at which judicial review results in vacatur or reversal of VA decisions is noteworthy. *See* Veterans Court, *Fiscal Year 2024 Annual Report* 3, https://tinyurl.com/bd7hj985 (documenting Veterans Court's 83% reversal or remand rate of agency decisions). As in this case, veterans who want to receive the benefits Congress has promised them face a years- or decades-long process, and

many do not live long enough to see the end of it. *See, e.g.*, Hugh B. McClean, *Delay, Deny, Wait Till They Die: Balancing Veterans' Rights and Non-Adversarial Procedures in the VA Disability Benefits System*, 72 SMU L. Rev. 277, 280-81 (2019).

***Eligible Individuals May File A Freestanding Claim To Recover Unpaid Benefits After A Veteran Dies.***

When a veteran dies, his or her personal right to accrue new benefits entitlements also ceases.[2] Thus, any regular disability compensation or pension benefits are discontinued "effective" as of "the last day of the month before" the veteran's death. 38 U.S.C. § 5112(b)(1). And, because the veteran is no longer living, he or she plainly cannot develop any new entitlement to non-periodic benefits such as housing adaptations, prosthetic devices, service animals, or automobile purchases. Nonetheless, as the Secretary recounts (OB5-7),

[2] The law provides certain benefits directly to the veteran's survivors, however. For example, dependency and indemnity compensation payments are available to the "surviving spouse, children, and parents" of a veteran who dies "from a service-connected or compensable disability." 38 U.S.C. § 1310(a). As another example, benefits are available to the children of veterans who served in particular conflicts and are born with conditions linked to their parent's service. *See, e.g.*, *id.* §§ 1802-1838. These benefits are not owed to the veteran directly and therefore do not cease upon the veteran's death. *See id.* § 1837.

the law has long provided mechanisms for a deceased veteran's family to obtain the benefits that should have been paid to the veteran during his or her lifetime but were not.

Dating back at least as far as the 1930s—the origin of the modern VA—the agency's regulations have provided for the payment of "accrued benefits" to a veteran's survivors. Early versions of such regulations, for example, directed that upon the death of a veteran, "[p]ension, compensation or emergency officers' retirement pay[] not paid during the lifetime of the person entitled thereto … shall … be paid" to the widow or minor children of the beneficiary. Veterans' Regulation No. 2(a), R-2662(A), 2 Fed. Reg. 1836, 1841 (Sept. 14, 1937). The widow or children could obtain these unpaid benefits by filing a claim for payment within one year of the veteran's death, and recovery on such a claim was limited to "payments due and unpaid at the time of death under then existing ratings or decisions." *Id.* R-2662(C). The regulation also contemplated that payment of such unpaid benefits could be made to individuals other than a widow or minor child, but only "so much as may be necessary to reimburse the person who bore the expense of burial." *Id.* R-2662(B).

As with many VA regulations, Congress codified the accrued benefits claim process into the veterans' benefits statute in 1957. The original version of this statute continued to list out the particular benefits that were subject to such a claim: "[p]ension, compensation, dependency and indemnity compensation, retirement pay, subsistence allowance, education and training allowance, special training allowance, and educational assistance allowance." Pub. L. No. 85-56, § 921(a), 71 Stat. 83, 121 (1957).[3] Any such benefits "to which an individual was entitled at his death under existing ratings or decisions, or those based on evidence in the file at date of death," were defined as "accrued benefits." *Id.* In other words, the meaning of a benefit that had "accrued" had now expanded to include not only benefits that VA had decided were owed to the veteran, but also those benefits for which entitlement was established based on the claim as it had developed thus far. The statute permitted such payment to, in order of priority, the

[3] Unpaid dependency and indemnity compensation would be payable, not upon the death of the veteran—since that is a prerequisite for entitlement to the benefit in the first place—but upon the death of the person entitled to those payments. So, for example, if a veteran's widow were receiving dependency and indemnity compensation, unpaid amounts that had accrued before her death could be claimed by the veteran's surviving children. Pub. L. No. 85-56, § 921(a)(3).

veteran's "spouse," minor "children," or "dependent parents"; "[i]n all other cases," it stated, "only so much of the accrued benefits may be paid as may be necessary to reimburse the person who bore the expense of last sickness and burial." *Id.* § 921(a)(2), (5). And it continued to require that any person seeking payment file an application within one year of the veteran's death. *Id.* § 921(c). The statute also limited recovery of any accrued benefits to "a period not to exceed one year." *Id.* § 921(a).

The modern version of this provision appears as 38 U.S.C. § 5121. Like its predecessors, § 5121 defines "accrued benefits" to include particular benefits—now encompassed by the shorthand, "periodic monetary benefits (other than insurance and servicemen's indemnity)"—"to which an individual was entitled at death under existing ratings or decisions or those based on evidence in the file at the date of death." 38 U.S.C. § 5121(a).[4] The one-year recovery limit—later

---

[4] Confusingly, the Secretary's brief repeatedly states that the term "accrued benefits" is synonymous with the term "periodic monetary benefits." *See, e.g.*, OB1, 6; *see also infra* 42-46 (addressing effect of this error on substantive arguments). That position is inconsistent with the statute, VA's regulation, other public statements by VA, the Board's decision in this case, and the position the Secretary took before the

extended to two years—was removed from the statute in 2003. *See* Pub. L. No. 108-183, § 104, 117 Stat. 2651, 2656 (2003).

Upon a veteran claimant's death, any "due and unpaid" accrued benefits "shall … be paid" to the first living person among the veteran's spouse, children, or dependent parents. 38 U.S.C. § 5121(a)(2). The statute explains how priority works among these three categories of individuals. *Id.* § 5121(a)(3)-(4). "In all other cases, only so much of the accrued benefits may be paid as may be necessary to reimburse the person who bore the expense of last sickness and burial." *Id.* § 5121(a)(6). Because the law defines "children" as unmarried children under the age of 18 (or between 18 and 23 if pursuing education), a

---

Veterans Court. As defined by the statute, all "accrued benefits" are "periodic monetary benefits," but the opposite is not true. Only those periodic monetary benefits that are due "under existing ratings or decisions or those based on evidence in the file at date of death" are considered "accrued." 38 U.S.C. § 5121(a); *see also, e.g.*, Appx89 (Secretary explaining this distinction in its brief to the Veterans Court); Addendum A1-A2, A8 (VA fast letter differentiating between the "types of benefits" that may be subject to accrual, and when such benefits have "accrued"). This understanding is consistent not only with the text of the law but with the ordinary meaning of "accrued" to refer to an entitlement that has been established but not yet satisfied. *See, e.g.*, Black's Law Dictionary (12th ed. 2024) (defining "accrued compensation" as "[r]emuneration that has been earned but not yet paid").

deceased veteran's adult children are eligible to recover accrued benefits only if they qualify under the "last sickness and burial" provision. *See id.* § 101(4)(A).

Notably, whether relying on "existing ratings or decisions" or "evidence in the [veteran's own] file at date of death," a person seeking accrued benefits under § 5121 still must file their own claim with VA, within one year of the veteran's death. *Id.* § 5121(a), (c). VA's regulation implementing § 5121 largely tracks the statute while addressing procedural and other details. *See* 38 C.F.R. § 3.1000.

***Eligible Individuals May Also Substitute As The Claimant In A Deceased Veteran's Pending Claim And Process It To Completion.***

Until recently, a claim for accrued benefits under § 5121 was the only way for a veteran's survivors to pursue benefits that should have been paid to their deceased relative during his lifetime but were not. That longstanding state of play led to such sweeping judicial pronouncements as, "veterans' claims under chapter 11 [of title 38, U.S. Code] do not survive their deaths." *Landicho v. Brown*, 7 Vet. App. 42, 47 (1994). The Veterans Court and this Court sometimes described

§ 5121 as the "limited" exception to that general rule. *Id.*; *see also, e.g.*, *Haines v. West*, 154 F.3d 1298, 1300 (Fed. Cir. 1998).

In 2008, however, the "foundation" for such statements "shifted." *Breedlove v. Shinseki*, 24 Vet. App. 7, 19 (2010). Congress enacted a new statute, § 5121A, as part of the Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, 122 Stat. 4145 ("2008 Act"). The 2008 Act, according to its legislative history, was designed to "comprehensively overhaul[]" VA's "claims processing system to ensure the accurate and timely delivery of compensation and pension benefits for veterans, their families, and survivors." H.R. Rep. No. 110-789, at 2 (2008). Discussing the need for the legislation in general, a House Committee report cited "increased waiting times" faced by VA claimants, paired with VA's "consistent[] fail[ure]" for more than 50 years to implement reform recommendations to address the problem. *Id.* at 2, 3.

Of relevance here, the report cited "the many instances where veterans die while awaiting resolution of a claim." *Id.* at 17. It quoted from testimony presented by the National Veterans Legal Services Program that specifically addressed the unfairness of the limitations in

the § 5121 process, including the need to restart a claim from "the back of the line," the inability to introduce "new evidence," and the limitation to only "periodic monetary benefits." *Helping Those Left Behind: Hearing Before the Subcomm. on Disability Assistance and Memorial Affairs of the H. Comm. on Veterans' Affairs*, 110th Cong. 29-31 (2007) (statement of Christine Cote, NVLSP); *see* H.R. Rep. No. 110-789, at 17. The committee report explained that "[a]llowing substitution" in a deceased veteran's pending claim would avoid such "unfair and inefficient" results. H.R. Rep. No. 110-789, at 17.

Section 5121A responds to many of the problems reflected in the legislative history. It applies when "a claimant dies while a claim for any benefit under a law administered by the Secretary, or an appeal of a decision with respect to such a claim, is pending." 38 U.S.C. § 5121A(a)(1). It allows eligible individuals to "be substituted as the claimant for purposes of processing the claim to completion." *Id.* Those eligible individuals include any "living person who would be eligible to receive accrued benefits due to the claimant under section 5121(a)." *Id.*; *see also id.* § 5121A(b) ("Those who are eligible to make a claim under

this section shall be determined in accordance with section 5121 of this title.”).

As this Court has recognized, § 5121A “makes clear that a veteran’s claim is *not* extinguished by his death.” *Reeves v. Shinseki*, 682 F.3d 988, 997 (Fed. Cir. 2012) (emphasis added). Now, an eligible individual can “step[] into the shoes” of the deceased claimant to pursue the claim to completion. Substitution in Case of Death of Claimant, 79 Fed. Reg. 52977, 52981 (Sept. 5, 2014) (to be codified at 38 C.F.R. pts. 3, 14, and 20). As the statutory language contemplates and VA’s implementing regulation confirms, this means the “substitute has the same rights regarding hearings, representation, appeals, and the submission of evidence as would have applied to the claimant had the claimant not died.” 38 C.F.R. § 3.1010(f)(3). The substitute cannot file any new claim that was not “pending” when the veteran died. *Id.* § 3.1010(g)(1); *see Crews v. McDonough*, 63 F.4th 37, 40 (Fed. Cir. 2023). And, if the claim is successful, the benefits awarded can only be those the veteran would have been able to recover during his lifetime. *See* 38 C.F.R. § 3.1010(g)(2). But in a system fraught with notorious, extended delay, the availability of substitution gives veterans’ survivors

an important tool to recover amounts that should have been paid to the veteran before he died.

### *Mr. Frazier, A Service-Connected Disabled Veteran, Pursues Claims For Additional Benefits.*

This case illustrates the importance of the § 5121A substitution procedure, and a review of the details (and delays) of its factual history will help put the statutory interpretation issues in context. The veteran is Mr. Clarence Frazier, who served honorably in the United States Navy from June 1988 to April 1993. Appx1; *see* Appx156. Mr. Frazier's tenure included service as a medic in Operation Desert Storm. As a result of this experience, Mr. Frazier developed post-traumatic stress disorder. VA deemed this disability service-connected and ultimately rated it as 100% disabling, meaning he had "[t]otal occupational and social impairment" due to symptoms such as "gross impairment in thought processes or communication," "persistent delusions or hallucinations," "persistent danger of hurting self or others," "intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene)," "disorientation to time or place," and "memory loss for names of close relatives, own occupation, or own name." 38 C.F.R. § 4.130; *see* Appx233. Mr. Frazier therefore

received disability benefits to compensate for his inability to earn a living due to his PTSD symptoms.

In 2010, Mr. Frazier filed a series of claims seeking additional benefits. These included (1) requests for compensation for disabilities that Mr. Frazier alleged were linked to his PTSD and therefore entitled to secondary service-connection under 38 C.F.R. § 3.310; (2) requests for special monthly compensation, a type of periodic benefit, based on both (a) permanent housebound status (38 U.S.C. § 1114(s)) and (b) need for regular aid and attendance (38 U.S.C. § 1114(*l*)-(m)); and (3) requests for non-periodic benefits including (a) automobile and adaptive equipment and (b) either specially adapted housing or a special home adaptation grant. Appx233-245.

In June 2011, a VA regional office granted Mr. Frazier service-connection for hypertension secondary to PTSD and rated this condition as 10% disabling. Appx235-236. It denied the rest of his claims. Without addressing certain favorable evidence—such as a medical opinion from VA treating physicians indicating a link between Mr. Frazier's sleep apnea and his service-connected PTSD—the regional office denied every other secondary service-connection claim. Appx236-

242. Likewise as to special monthly compensation, despite noting evidence such as a VA examiner's certification that Mr. Frazier "require[d] daily personal health care service of a skilled provider without which [he] would require hospital, nursing home, or other institutional care," the regional office found insufficient evidence that he "need[ed] the assistance of another person to help [him] with [his] activities of daily living." Appx242-243. The regional office denied Mr. Frazier's claims for non-periodic benefits because it found that he did not have the requisite service-connected disabilities; for example, despite acknowledging evidence that Mr. Frazier's lower extremities were restricted (a relevant factor in a request for specially adapted housing), the regional office relied on its denial of secondary service-connection for venous insufficiency (a vein condition of the legs) to deny this request as well. Appx243-245.

Mr. Frazier promptly indicated his intent to challenge the adverse aspects of this decision. Appx199. Eighteen months later, in March 2013, VA issued a statement of the case—necessary to perfect an appeal to the Board—that largely echoed the reasoning of the June 2011

decision. *See* Appx197-199; Appx221-232; Appx235-245. Mr. Frazier promptly filed his appeal. Appx196.

Thirty-two months later, in January 2016, the Board issued a ruling agreeing with Mr. Frazier across the board, except with respect to one issue that Mr. Frazier had voluntarily withdrawn from his appeal. Appx187-188. The Board found that, for the claims where VA had performed a medical examination of Mr. Frazier, the resulting opinions were "inadequate." Appx190. One examiner, for example, had cited "travel issues" as a reason for cutting short her examination of Mr. Frazier. Appx190. Even as to the one condition she examined him on—sleep apnea—she "could not render an opinion" on whether it was linked to his PTSD "without speculation." Appx190. Another examiner had "failed to provide a sufficient reasoning/rationale" for his opinion that Mr. Frazier's prostate condition was unrelated to his PTSD, and "did not address" whether the PTSD could have aggravated this condition. Appx190.

Despite these deficiencies, and despite countervailing evidence supporting Mr. Frazier's service-connection claims, the regional office had denied them all. The Board accordingly ordered a remand for

further development of evidence regarding Mr. Frazier's claims. Appx190-195. The Board also found Mr. Frazier's claims for special monthly compensation and non-periodic benefits "inextricably intertwined" with the service-connection claims and so remanded them as well. Appx191. It reminded the regional office that "[t]hese claims must be afforded expeditious treatment." Appx195.

Mr. Frazier then endured not only additional examination and factual development but an additional two rounds of denials, appeals, and remands on his sleep apnea claim. Appx158. In May 2020—more than four years after the directive for expeditious treatment—the regional office issued its supplemental statement of the case, continuing to deny all of Mr. Frazier's claims. Appx175-183. On sleep apnea, for example, the regional office addressed none of the medical or lay evidence of record but instead cited an article from "[t]he medical literature" supposedly reporting "that obstructive sleep apnea diagnosis is not increased due to post-traumatic stress disorder." Appx179. As to the conditions for which Mr. Frazier claimed a causal link by way of his obesity, which was in turn caused by his PTSD, the regional office similarly relied on "[a]n article regarding BMI" rather than

comprehensively addressing the evidence of record. Appx181. As to special monthly compensation, the regional office did not even provide its reasoning; it simply recited the applicable standards without explaining the basis for denial. Appx182. And, as to the non-periodic benefits, the regional office continued to rely on Mr. Frazier's lack of a qualifying service-connected condition (such as the conditions for which it was simultaneously denying service-connection). Appx182-183.

Mr. Frazier again promptly appealed this decision to the Board. Appx3.

***Mr. Frazier's Adult Daughter Substitutes As The Claimant After His Death, And The Board Issues A Mixed Ruling On The Remaining Claims.***

Before the Board could address his latest appeal, Mr. Frazier died in August 2020. Appx3. His two adult daughters filed claims under 38 U.S.C. § 5121(a), for accrued benefits, as well as applications under 38 U.S.C. § 5121A, to be substituted as claimants. Appx165-174. VA permitted Ms. Jeanine Frazier, cross-appellant here, to substitute as the claimant because she demonstrated she had borne the last sickness or burial expenses for her father. Appx51-52; *see* Appx3. (VA denied the corresponding requests filed by Ms. Frazier's sister. Appx161-162.)

The Board issued a decision on the pending claims, now pursued by Ms. Frazier, in April 2022. Appx30-48. Twelve years after Mr. Frazier had first filed his claims, the Board finally agreed that he should have been entitled to secondary service-connection for three conditions. As to sleep apnea, the Board assigned no probative weight to the deficient VA examinations and found that a "thorough" private medical opinion along with supporting lay evidence were "entitled to significant probative weight overall." Appx36. As to benign prostatic hypertrophy, the Board again found VA's own examination deficient—in part because it "denied a diagnosis" of the condition "despite such being replete through the Veteran's VA treatment records." Appx37. Here too, the Board instead credited the private medical opinion with "detailed rationales" linking Mr. Frazier's prostate condition to his obesity, which was in turn linked to his service-connected PTSD. Appx37-38. The Board faulted the regional office for ignoring this medical evidence and relying instead on a "generic[]" citation to an article about BMI. Appx38. The Board provided similar reasons for granting secondary service-connection for venous insufficiency of both

legs—a condition Mr. Frazier had been diagnosed with back in 2005. Appx38.[5]

The Board also held that Mr. Frazier had been entitled to special monthly compensation based on the need for regular aid and attendance. Here, the Board relied on the finding from the original 2010 examination regarding Mr. Frazier's need for "daily personal services of a skilled provider" due to his PTSD and other conditions linked to that disorder. Appx44-45. The Board also cited further evidence of need that had developed in the years that Mr. Frazier's claim had been pending. Appx45. And it observed both that Mr. Frazier had "employed a paid clinician to assist him with his activities of daily living" and that his "daughter assisted him on a daily basis." Appx45. The Board therefore found the criteria for aid and attendance satisfied. Appx45-46. Despite recognizing Mr. Frazier's essential confinement to his house—and even his room—before his death, however, the Board "dismissed" the claim for special monthly

[5] The Board also granted an increased rating for Mr. Frazier's service-connected hypertension. Appx43. The Veterans Court incorrectly stated that this request had been denied. Appx1 n.2.

compensation based on housebound status because the aid and attendance grant "represents a higher benefit." Appx46.

Finally, the Board also dismissed the claims for non-periodic benefits. The Board "acknowledge[d] that the Veteran's adult child has been granted substitution in the present appeal." Appx34. But it reasoned that, "[e]ven in substitution claims," a claimant is limited only to "claims for periodic monetary benefits." Appx34. In so holding, the Board cited VA's regulation, which states (in contrast to the statute) that substitution is allowed only in "a claim for periodic monetary benefits" that was pending when the veteran died. 38 C.F.R. § 3.1010(a).

***The Veterans Court Holds That Ms. Frazier May Pursue Her Father's Claims For "Any Benefit," But Limits Her Recovery On Those Claims.***

Ms. Frazier appealed to the Veterans Court, challenging (1) the Board's limitation of substitution to claims for periodic monetary benefits; and (2) the Board's dismissal of the special compensation claim based on housebound status. Appx55-78. The Secretary agreed that the Board's treatment of the special monthly compensation claim lacked an adequate supporting rationale and so agreed to a remand of that

issue. Appx96-97. But it defended the Board's decision on the scope of the substitution statute, arguing that "one can only be eligible to any *periodic monetary benefits* that were due to the Veteran at the time of his death." Appx92 (citing § 5121(a)) (emphasis added).

In a panel decision, the Veterans Court disagreed with the Secretary on this score. The court looked to the text of § 5121A and explained that, in the first part of the statute, "Congress specified *what claims* were subject to substitution": namely, "a claim for 'any benefit under a law administered by the Secretary' pending at the time of a claimant's death." Appx14 (quoting 38 U.S.C. § 5121A(a)). The Veterans Court recognized Congress's deliberate choice to use broader language in the substitution statute than it did in the accrued benefits statute, where only certain periodic monetary benefits are available. Appx14-15. The court rejected the Secretary's argument that, because § 5121A cross-references § 5121(a) to identify the individuals who are eligible for substitution, it imports the limitation to periodic monetary benefits claims as well. As the Veterans Court explained, this argument "conflates two distinct parts of section 5121A: specification of *what* type of claim is eligible for substitution versus *who* is eligible to

substitute." Appx15. The court held that VA's regulation, which substitutes "the phrase 'a claim for periodic monetary benefits' in place of the broad 'any benefit' language Congress used in the governing statute," is invalid to the extent it conflicts with the clear language of § 5121A. Appx16.

The Veterans Court did accept the Secretary's argument that claimants like Ms. Frazier are limited in *how much* they can recover, even though § 5121A sets no such limit. The court observed that "Congress clearly restricted those who are eligible to seek substitution under section 5121A to those persons who are eligible accrued benefits recipients under section 5121(a)." Appx16. Although she is Mr. Frazier's child, Ms. Frazier was over the age of 18 when she substituted in her father's claim. She is therefore a "person who would be eligible to receive accrued benefits," in the language of § 5121A, only by virtue of § 5121(a)(6), which refers to "the person who bore the expense of last sickness and burial." Although § 5121A itself does not contain any limit on the amount of benefits such individuals can recover upon substitution as a claimant, the Veterans Court held that the limitation

from § 5121(a)(6) is incorporated into the substitution statute as well. Appx16-18.

The Veterans Court first stated that Ms. Frazier's argument on this score was "underdeveloped," Appx17, even though the issue had been raised for the first time in the Secretary's appeal brief, meaning Ms. Frazier could address it only in reply. *See* Appx88-95; Appx106-107. Regardless, the Veterans Court proceeded to address the issue on the merits. But its reasoning did not turn on any textual analysis—nor did it adopt any argument raised by the Secretary. Instead, the Veterans Court created its own rationale that the "cap" from § 5121(a)(6) must apply in substitution cases as well as accrued benefits claims in order to avoid what the Veterans Court viewed as an "absurd result": "a pay-for-profit substitution scheme" in which individuals unrelated to veterans would pay for their funeral expenses in order to be permitted to substitute in their pending benefits claims, pursue them to completion, and recover "an unlimited amount." Appx18. The Veterans Court "assume[d] Congress did not intend" this hypothetical scenario that the court itself imagined, and on that basis "read section 5121A to require that a person who is allowed to substitute on the

grounds that they bore the expense of a veteran's last sickness and burial is limited by the amount of such expense when allowed to substitute into a deceased veteran's claim." Appx18.

The Veterans Court reversed the Board's holding that Ms. Frazier could not substitute in her father's claims for non-periodic benefits and remanded for the Board to adjudicate those claims and conduct further proceedings regarding the special monthly compensation (housebound status) issue. Appx20-21.[6]

## SUMMARY OF ARGUMENT

**I.** The Veterans Court correctly interpreted § 5121A to permit substitution in a pending claim for "any benefit under a law administered by the Secretary," just as its text says. The Veterans Court properly relied on that plain statutory text and considered its context, including Congress's choice to use different language in § 5121A from the more limited language of § 5121. VA's regulation limiting substitution to claims for periodic monetary benefits is contrary

[6] The Veterans Court also rejected the Secretary's argument that Ms. Frazier's appeal was "moot" on the ground that the agency had attempted to send her a check for the full amount she had paid for her father's burial expenses. The Secretary does not raise mootness on appeal. *See* OB12 n.6.

to the plain text of the statute and therefore invalid. And the Secretary's attempt in this appeal to limit § 5121A even further to permit substitution only in claims for "accrued benefits" (a specific subset of "periodic monetary benefits") is contrary not only to Congress's "any benefit" language but also to the fact that substitute claimants are allowed to present new evidence in support of a claim—which means, by definition, that the benefits are not "accrued" as defined by § 5121.

None of the Secretary's arguments for a more limited interpretation has merit. Although § 5121A cross-references § 5121, it does so only for the limited purpose of defining *who* is eligible to substitute—not *what* benefits they may pursue as a substitute. Consistent with extensive precedent, the limited cross-reference cannot be read to fairly incorporate anything more than the eligibility criteria of § 5121. Nor does § 5121A depend on § 5121 to authorize payment of benefits, which would (in the Secretary's view) justify incorporating additional limitations from that statute. The Secretary's argument misunderstands the nature of substitution; a substitute claimant is pursuing the same claim as the original claimant had been, so the

source of authority to pay that claim remains the same as it always was.

The Secretary's resort to arguments about supposed congressional purpose similarly misapprehend both the legislative history and the purpose of veterans' benefits. And the Secretary's reliance on VA's own administrative interpretations cannot defeat the plain statutory text—particularly where those interpretations contain no analysis of the text and have not remained consistent even in the short time since § 5121A was enacted.

**II.** The Veterans Court erred in interpreting § 5121A to limit recovery for (a)(6)-eligible substitutes to reimbursement of the expense of the claimant's last sickness and burial. Just as § 5121A, by cross-referencing the "who" of § 5121, does not incorporate "what" benefits claims are proper for substitution, it also does not incorporate "how much" any substitute claimant may recover, including the limitation on accrued benefits recoverable by individuals named in § 5121(a)(6). The Veterans Court provided no textual basis for holding otherwise, and its concern about potential absurd results from a contrary interpretation is both unfounded and, in all events, cannot change the statutory text.

This Court's precedent reaching the same flawed interpretation of § 5121(a)(6)—in the context of finding an appeal to this Court moot—likewise provides no clear or persuasive reason for importing the limit of § 5121(a)(6) into § 5121A, and Ms. Frazier respectfully requests overruling of that case under Federal Circuit Rule 40(a)(4).

## STANDARD OF REVIEW

This Court has jurisdiction to review a decision of the Veterans Court regarding the validity or interpretation of any statute or regulation. 38 U.S.C. § 7292(c). The Court "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." *Id.* § 7292(d)(1). The Court reviews the Veterans Court's statutory interpretation de novo. *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018).

## ARGUMENT

### I. The Veterans Court Properly Interpreted 38 U.S.C. § 5121A To Allow Substitution In "A Claim For Any Benefit."

The Veterans Court correctly interpreted § 5121A according to its plain text and held that substitution is permitted in a claim for "any benefit" that is pending when a claimant dies. There is no indication that Congress instead wanted to limit substitution to claims for periodic

monetary benefits, as VA's regulation provides and as the Board held in dismissing Ms. Frazier's claims to the non-periodic benefits her father was pursuing before his death. By incorporating the list of eligible claimants from § 5121 into § 5121A, Congress did not also incorporate other limitations of that statute, such as the limit on what types of benefits are recoverable.

There certainly is no indication that Congress wanted to go even further and limit substitution only to claims for those periodic monetary benefits that had "accrued" by the time of the veteran's death, as the Secretary argues in his brief to this Court. As noted above (at 16 n.4, 35), the Secretary's brief improperly collapses the difference between "periodic monetary benefits" and the subset of periodic monetary benefits that are also "accrued benefits" under the definition provided in § 5121(a). It is therefore not entirely clear if the Secretary means to take a narrower view of § 5121A than even his own regulation.

Whatever precise limit he wants, however, the Secretary offers no justification for it. The Secretary fights the plain statutory text, misapprehends the nature of substitution, and invents arguments about congressional purpose that have no basis in fact or law. Although the

Secretary complains that the Veterans Court ignored relevant context and focused unduly on the lone word "any" in § 5121A, the Veterans Court did no such thing. It examined both text and context and adhered to well-established principles of statutory interpretation. Those principles properly led the Veterans Court to the conclusion that "[i]n this context, as in so many others, 'any' means 'every.'" *SAS Inst. Inc. v. Iancu*, 584 U.S. 357, 359-60 (2018).

### A. The plain text of § 5121A allows for substitution in "any" VA benefit claim.

Statutory construction begins with the language of the statute. *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). If the language of the statute is "unambiguous" and results in a "coherent and consistent" scheme, the inquiry ends with that plain text. *Id.* (citation omitted).

As the Veterans Court correctly recognized, the plain text of § 5121A answers the question of what type of benefit claims are amenable to substitution: all of them. *See* Appx14-16. The statute provides, in relevant part:

> If a claimant dies while a claim for *any benefit* under a law administered by the Secretary, or an appeal of a decision with respect to such claim, is pending, a living person who would

> be eligible to receive accrued benefits due to the claimant under section 5121(a) of this title may, not later than one year after the date of the death of such claimant, file a request to be substituted as the claimant for the purposes of processing the claim to completion.

38 U.S.C. § 5121A(a)(1) (emphasis added). The statute unambiguously provides for substitution in a claim for any VA benefit, whether pending at the original level of adjudication or on appeal to the Board.

Congress placed no limits on the type of benefit claim for which substitution may be sought. As the Veterans Court observed, "Congress did not restrict the type of benefit for which substitution is allowed in any way other than it be a benefit the Secretary of the Department of Veterans Affairs administers." Appx14. Instead, Congress used the word "any" to describe the benefits claims that a substitute claimant may pursue. 38 U.S.C. § 5121A. That term "naturally carries 'an expansive meaning.'" *SAS Inst.*, 584 U.S. at 362-63 (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). When (as here) it is used in an affirmative context—namely, describing what an eligible person may do—and modifies a singular noun ("benefit"), "any" refers to "*every* member of the class or group" described. *Id.* at 363 (quoting Oxford English Dictionary (3d ed. Mar. 2016)).

The Secretary (OB20-21) cites cases in which the word "any" has not been interpreted so broadly, but each is readily distinguished. Affording "any" its normal meaning here does not negate other statutory text, for example. *Contrast Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 123-24 (2018) (rejecting interpretation of "any effluent limitation or other limitation" that would encompass limitations having nothing to do with the discharge of pollutants and thereby expand the statute to "any limitation"). Nor does this reading inadvertently expand the criminal jurisdiction of the United States—or the statutory jurisdiction of the VA.[7] *Contrast United States v. Palmer*, 16 U.S. 610, 631-34 (1818) ("any person," in statute criminalizing piracy as an offense against the United States, did not reach non-citizens sailing on non-U.S.-flagged vessels on the high seas).

Adhering to § 5121A's plain text also does not render the statute incoherent, as in *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994). The law there dealt with the admissibility of confessions

---

[7] To be clear, the statute is plainly limited to benefits available "under a law administered by the Secretary," 38 U.S.C. § 5121A, and does not encompass benefits provided by other agencies, for example. This brief uses the term "any benefit" as a shorthand in lieu of repeating that more cumbersome language.

provided while a person was "under arrest or other detention in the custody of *any* law-enforcement officer or law-enforcement agency," but the Court explained that additional statutory context limited this provision to federal (not state or local) custody. *Id.* at 356-57 (emphasis added). Specifically, the statute addressed admissibility in cases of delay between the start of the detention and presentation of the individual to a federal magistrate; unless an individual is in *federal* custody, however, there can be no delay in bringing them before a *federal* magistrate, because there is no obligation to do so. As a result, "any law-enforcement officer or … agency" must be read to incorporate federal (and not state or local) charges. *See id.* at 357-58. There is no similar problem parsing § 5121A's text if "any benefit" means "any benefit." *See infra* 42-45.

In all events, what the Secretary's cases confirm is that the meaning of "any," like all statutory text, "necessarily depends on the statutory context." *Nat'l Ass'n of Mfrs.*, 583 U.S. at 123. And here, the statutory context only reinforces Congress's clear intent to allow substitution in any pending benefits claim. Section 5121(a), the provision immediately preceding § 5121A, expressly limits applications

for payment under that statute to "accrued benefits," which it defines as "periodic monetary benefits … to which an individual was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death." 38 U.S.C. § 5121(a). Section 5121A, in contrast, does not limit substitution to "periodic" benefits, let alone limit it to only those periodic benefits that have "accrued" at the time of the veteran's death by virtue of existing ratings, decisions, or evidence.

The use of different language in these two statutes—both addressing what happens to VA benefits upon a veteran's death—underscores the conclusion that "Congress in fact intended two different things." *Metro. Area EMS Auth. v. Sec'y of Veterans Affs.*, 122 F.4th 1339, 1345 (Fed. Cir. 2024) (rejecting VA regulation that imported language from one statutory provision into another where it did not appear). Courts interpreting statutes will "presume differences in language like this convey differences in meaning." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017); *see also, e.g.*, *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, 108 F.4th 1376, 1382 (Fed. Cir. 2024) (when "Congress used two different phrases in two separate provisions," Court must "assume Congress means what it says and says what it means").

The Veterans Court recognized as much: "It would be remarkable if Congress meant the same thing it said in section 5121(a) when it used the term 'any benefit' in section 5121A." Appx15. The court's interpretation of § 5121A to permit substitution in any benefit claim, rather than just claims for periodic monetary benefits (or accrued benefits), properly accounted for this well-established principle.

Unlike the Secretary's apparent attempt to limit § 5121A to *accrued* benefits claims, this reading also makes sense of the full statutory text and context. Whereas § 5121(a) permits an accrued benefits claimant to be paid only certain benefits that the deceased veteran was entitled to under existing ratings, decisions, and evidence, a substitute claimant under § 5121A is entitled to "process[] the claim to completion." As the Secretary recognizes (OB22-23), this includes submitting additional evidence in support of the claim. *See* 38 C.F.R. § 3.1010(f)(3) (substitute claimant "has the same rights regarding hearings, representation, appeals, and the submission of evidence as would have applied to the claimant had the claimant not died"); *see also id.* § 3.1010(f)(2) (permitting substitute to "raise new theories of entitlement in support of the claim"). The ability to introduce new

evidence is starkly at odds with the Secretary's insistence that substitute claimants may pursue only "accrued benefits," which are definitionally limited to the ratings, rulings, and evidence on file at the time of the veteran's death. *See* 38 U.S.C. § 5121(a)(1).

That is why it matters, as the Veterans Court noted, that "[t]he factual background of an accrued benefits claim is different from that of a substitution claim," meaning that a benefit unavailable under § 5121(a) could nonetheless be allowed under § 5121A. Appx15. The Secretary deems it "unclear how this supports the Veterans Court's interpretation of section 5121A." OB22. "[J]ust because procedural paths differ in their limits on evidentiary development," says the Secretary, "does not demonstrate that they are intended for different types of claims." OB23. That may be true in the abstract—or, as in the Secretary's example, of the different procedural "lanes" available to VA claimants. But it is demonstrably untrue in this instance, where the ability to submit new evidence following substitution inherently means that any benefit granted based on that new evidence was not "accrued" at the time the veteran died.

In sum, § 5121A unambiguously permits an eligible person to substitute as claimant in a pending claim for "any benefit under a law administered by the Secretary." VA's implementing regulation, however, limits substitution to claims "for periodic monetary benefits." 38 C.F.R. § 3.1010(a). The Veterans Court rightly held that regulation "invalid to the extent it is inconsistent with the plain and ordinary meaning of 38 U.S.C. § 5121A." Appx20; *see, e.g.*, *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 276 (2016) ("Where a statute is clear, the agency must follow the statute."); *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134 (1936) (agency's power is limited to "carry[ing] into effect the will of Congress as expressed by the statute"); *Metro. Area*, 122 F.4th at 1347-48 (setting aside final rule that conflicted with statute and thus "exceed[ed] the discretionary [rulemaking] authority Congress granted the VA").

### B. The Secretary's attempts to avoid the plain meaning of the statute are unavailing.

The Secretary criticizes the Veterans Court for putting "too much weight [on] the single word 'any' without regard for its statutory context." OB19. As just demonstrated, however, the Veterans Court's ruling turned not on the mere word "any" but on a thorough

consideration of statutory text and context. None of the Secretary's attacks on the Veterans Court's reasoning shows otherwise.

#### 1. Section 5121A's cross-references to § 5121 incorporate only the question of "who" is eligible to substitute, not "what" claims they may pursue.

The Secretary first argues that, because § 5121A cross-references § 5121 in two places, "Congress intended to tie substitution to claims for accrued benefits." OB15-16. The Veterans Court correctly rejected that argument. Appx15. The cross-references are limited to defining which persons are eligible for substitution—that is, they address the question of "who" can substitute in a deceased veteran's claim. There is no indication that Congress also intended for anything in § 5121 to define "what" benefit claims those eligible individuals may pursue once substituted.

Section 5121A contains two cross-references to § 5121. It first states that the substitution procedure is available to "a living person who would be eligible to receive accrued benefits due to the claimant under section 5121(a) of this title." 38 U.S.C. § 5121A(a)(1). Then, because there can be only one substitute claimant at a time, the statute confirms that the order of priority is governed by the same hierarchy as

for accrued benefits claims: "Those who are eligible to make a claim under this section shall be determined in accordance with section 5121 of this title." *Id.* § 5121A(b). Both cross-references address only the question of which individuals can seek substitution. Neither cross-reference incorporates anything about what kind of benefits claim those individuals may pursue once substituted. As the Veterans Court aptly put it, "using the list from section 5121(a) to identify *who* can be substituted doesn't alter the choice Congress made about *what* benefits are subject to substitution." Appx15.

That conclusion is consistent with how courts treat statutory cross-references generally. When, as here, one statute refers to only a specific part of another statute, courts have refused to hold that anything beyond that specific part is incorporated. *See, e.g.*, *Bd. of Trs. of Bakery Drivers Loc. 550 & Indus. Pension Fund v. Pension Benefit Guar. Corp.*, 136 F.4th 26, 30 (2d Cir. 2025) (Special Financial Assistance statute did not, by incorporating a particular definition from another statute, also incorporate un-referenced limitations on the operation of the referenced statute); *United States ex rel. Bryant v. Cmty. Health Sys., Inc.*, 24 F.4th 1024, 1035 (6th Cir. 2022) (by

referring to actions brought by persons identified in a particular statute, False Claims Act fee provision did not further incorporate procedural requirements also applicable to that statute); *Barma v. Holder*, 640 F.3d 749, 752 (7th Cir. 2011) (removal statute's reference to offense defined in another statute did not also incorporate waiver provision of that statute); *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652 (9th Cir. 2004) (removal statute's reference to conviction for offenses listed in another statute did not incorporate requirement of conviction under that statute—only the list itself).

The D.C. Circuit adhered to this principle in what is essentially the mirror image of this case. The Rehabilitation Act of 1973, among other things, requires federal agencies to use technology accessible to employees with disabilities. *See Orozco v. Garland*, 60 F.4th 684, 685 (D.C. Cir. 2023). "[A]ny individual" who files an administrative complaint about inaccessible technology is afforded "[t]he remedies, procedures, and rights set forth in" another provision of the Rehabilitation Act (which in turn cross-references the remedies, procedures, and rights of title VI the Civil Rights Act). 29 U.S.C. § 794d(f)(3). The cross-referenced provision, however, contains its own

limitations on "who can sue." *Orozco*, 60 F.4th at 688. The D.C. Circuit thus confronted the question whether a cross-reference to the "what" in a particular statute—its remedies, rights, and procedures—also brought with it the limited "who" of that statute, despite the original statute's broad reference to "[a]ny individual." *See id.*

The court answered that question in the negative. It "t[ook] Congress at its word" that the incorporation of remedies and rights from another part of the Rehabilitation Act "did that and no more." *Id.* at 689. "If Congress had meant also to incorporate Section 794a's limits on who may sue, Congress would have said so. It did not." *Id.* Indeed, as the D.C. Circuit pointed out, the Supreme Court has reached the same conclusion when confronting a similar question about the Rehabilitation Act's internal cross-references, holding that section 794a's own incorporation of the title VI rights and remedies does not bring with it a corresponding limitation on which entities are subject to suit. *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 632-33 (1984) (emphasizing section 794a's reference to "*any* program" receiving federal funding, not the more limited set of programs subject to suit under title VI).

Just as the Rehabilitation Act's incorporation of other statutes' remedies did not undermine its provision of rights to "any" individual, § 5121A's reference to the eligible individuals listed in § 5121(a) does not undo the statute's broad provision for substitution in pending claims for "any benefit." The Secretary's lone cited authority (OB16) does not suggest otherwise. In *Panama Railroad Co. v. Johnson*, the Supreme Court explained that a statutory cross-reference brings with it "all that is fairly covered by the reference." 264 U.S. 375, 392 (1924). But the key question is what any individual reference fairly covers. In *Panama Railroad*, the act (governing injuries to seamen) broadly stated that "all statutes" modifying the common-law right of personal injury in cases of railway employees "shall apply." *Id.* at 383. That directive fairly incorporated everything in the referenced statutes. Section 5121A's much more limited cross reference to § 5121(a) does not.

The Secretary objects that, if Congress had wanted to incorporate only the eligibility requirements of § 5121, and nothing more, "it could have simply listed separate criteria to be met for substitution in section 5121A instead of referring to section 5121." OB16. This argument erroneously assumes that Congress cannot use statutory cross-

references unless it wants to incorporate *everything* about the referenced statute into the referencing statute. That is plainly not the law, as the exemplary cases cited above illustrate. Congress used a clear, straightforward mechanism to avoid having to relist the eligibility criteria (including the priority of eligibility) from § 5121(a) in § 5121A. Indeed, if Congress had wanted to incorporate *more* than just those criteria, it would have been easy to do so: among many other simple options, Congress in drafting § 5121A could have said "a claim for periodic monetary benefits," or "a claim for any benefit listed in § 5121(a)," rather than just "a claim for any benefit." Congress did not.

The Secretary also relies on the Veterans Court's separate holding that § 5121A incorporates the cap on recovery for substitute claimants whose eligibility is based on § 5121(a)(6)—a conclusion this Court has also reached—arguing that it is "analytically irreconcilable" to incorporate this cap but not the limit on what type of benefits may be recovered. OB16-17; *see Smith v. Collins*, 133 F.4th 1059 (Fed. Cir. 2025). As demonstrated below (in § II), the Veterans Court and the *Smith* decision erred in incorporating the cap.

But even if it were proper to incorporate the "how much" of § 5121(a)(6) into § 5121A, that still provides no basis to contradict the clear language Congress used and limit "what" type of benefits *any* substitute claimant—not just one whose eligibility is based on (a)(6)—may pursue upon substitution. This Court's ruling in *Smith* turned on its interpretation of the language that limits substitution to individuals who are eligible to seek accrued benefits under § 5121. 133 F.4th at 1061-62. But whether (and how much) a particular individual is eligible to eventually recover as a substitute claimant is a different question from what type of benefits that substitute may pursue from the outset. There is zero indication that Congress intended that latter question to be limited by anything in § 5121. Moreover, § 5121A does not contain language that directly addresses how much a substitute claimant may recover. The *Smith* decision, therefore, at least does not contradict any express statutory language by incorporating the recovery cap from § 5121(a)(6). But extending the logic of *Smith* to limit what types of benefits a substitute claimant can pursue from the start, as the Secretary proposes, would run headlong into § 5121A's "any benefit" language, and cannot be correct.

### 2. A substitute claimant pursues the pending claim—not a new claim under § 5121.

The Secretary next argues that § 5121A substitution must be limited to the types of benefits named in § 5121 because only the latter statute creates a claim that authorizes payment of benefits to survivors. OB17-19. This argument fundamentally misapprehends how § 5121A works. Unlike an applicant for accrued benefits under § 5121, a claimant substituting in a deceased veteran's claim under § 5121A is not asserting their own entitlement to payment. They are pursuing the same claim the veteran was pursuing during his lifetime.

The Secretary is correct that § 5121 creates a new, independent entitlement to accrued benefits for eligible individuals, giving rise to a new claim for payment. OB18-19; *see, e.g.*, *Phillips v. Shinseki*, 581 F.3d 1358, 1363 (Fed. Cir. 2009) (explaining that, under § 5121, "certain successors acquire an interest in the veteran's benefits," and that any accrued benefits "can be claimed" by those individuals); *Zevalkink v. Brown*, 102 F.3d 1236, 1241 (Fed. Cir. 1996) ("A claim for accrued benefits under § 5121 … is based on a separate statutory entitlement for which an application must be filed in order to receive benefits.").

Both this Court and the Veterans Court have recognized that a request for substitution under § 5121A is different. Section 5121A does not create any new entitlement, nor does it require (or even allow) a new claim. *See Crews*, 63 F.4th at 40-41 (emphasizing that § 5121A permits substitution to process a veteran's pending claims to completion but does not permit new claims); *Reliford v. McDonald*, 27 Vet. App. 297, 302 (2015) ("[S]ubstitution under section 5121A continues the deceased claimant's underlying claim, it does not create a new and independent substantive *claim* for VA benefits."). Rather, § 5121A allows for substitution "for the purpose of processing *the veteran's* 'claim to completion.'" *Reeves*, 682 F.3d at 997 (quoting 38 U.S.C. § 5121A(a)(1)); *see also id.* ("The statute thus makes clear that a veteran's claim is not extinguished by his death. Instead, it survives so that it can be processed 'to completion.'").

Thus, a substitute claimant under § 5121A is not pursuing an entitlement created by § 5121. She is pursuing whatever underlying entitlement the original claimant was pursuing—such as a claim for disability compensation under 38 U.S.C. § 1110, for special monthly compensation under § 1114, for assistance in making housing

adaptations under § 2101(b), and so forth. As VA itself explained when promulgating regulations under § 5121A, a substitute claimant "essentially steps into the shoes" of the deceased claimant. 79 Fed. Reg. at 52981.

In this way, § 5121A functions like a survival statute, which are "almost universal in the states" and also exist elsewhere in federal law. Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1954 (3d ed.). The claim is the same; only the person pursuing it changes. And because that claim (whatever it is) does not depend on § 5121 for an authorization of payment, there is no basis for importing into § 5121A any aspect of that statute other than the one expressly incorporated by reference.

#### 3. The purpose and history of § 5121A support a plain-text reading, not the Secretary's misinterpretation.

The Secretary next argues that the Veterans Court's statutory interpretation violates "[t]he purpose and history of the statutory scheme." OB24. But in recounting that supposed "purpose and history," the Secretary simply assumes his interpretation of the statute is correct, then crafts a narrative to fit that interpretation which has no basis in the actual history (let alone the text) of the statute.

As demonstrated above (at 18-22), Congress enacted § 5121A as part of a comprehensive legislative effort to address delays in the VA claims-processing system—delays that meant many veteran claimants died before receiving the benefits to which they were entitled. And Congress specifically responded to concerns raised about the limits of the § 5121 process. Those concerns included the problem of having to return to the "back of the line," because a § 5121 application is a new claim. *See* H.R. Rep. No. 110-789, at 17. But they also included the inability to submit new evidence on a pending claim, the limitation to periodic monetary benefits, and even the unfairness to veterans' surviving children who may have been minors when the claim process started but have become adults by the time an accrued benefits claim becomes necessary. *See Helping Those Left Behind*, *supra*, 110th Cong. 29-30; H.R. Rep. No. 110-789, at 17. Congress specifically heard an example of a veteran who had lost the use of both legs and died while his claim for specially adapted housing was pending. Although the veteran had been working with VA to secure the correct approvals and would have been entitled to reimbursement had he lived, "it was too bad the family had already paid the money," because § 5121's "requirement

of periodic monetary benefits" meant "the family could not collect." *Helping Those Left Behind*, *supra*, 110th Cong. 31. One congressman remarked that stories of VA's delay reminded him of the health insurance industry "looking to deny, deny, deny as long as they can because that way they hold on to the money as long as possible." *Id.* at 32.

The full legislative history cannot be squared with the Secretary's insistence that § 5121A is nothing "more than a procedural mechanism for seeking section 5121(a) accrued benefits." OB26. Its enactment was instead a broader attempt to address the "unfair *and* inefficient" results produced by the limited regime of § 5121. H.R. Rep. No. 110-789, at 17 (emphasis added). And, contrary to the Secretary's claim (OB27), no court has held otherwise. This Court cited the "back of the line" problem in holding that § 5121A does not authorize an eligible individual to file a "freestanding CUE claim" that was not pending before the veteran's death. *Rusick v. Gibson*, 760 F.3d 1342, 1346-47 (Fed. Cir. 2014). But it did not suggest (let alone "hold[]") that this was

the sole purpose of § 5121A, or that the statute was strictly a procedural alternative to achieve the same result allowed under § 5121.[8]

Nor did the Veterans Court do so in *Reliford*. *Contra* OB27. The court there held that VA's policy of automatically treating accrued benefits claims under § 5121 as requests for substitution under § 5121A, without notice and an opportunity for waiver, was improper. *Reliford*, 27 Vet. App. at 304. In doing so it emphasized the differences between the two procedures, including that substitution "does not create a new and independent substantive *claim*" and that substitute claimants "are afforded the ability to further develop the record." *Id.* at 302. It also cited Congress's intent "to address the concern of delay, unfairness, and inefficiency"—not merely inefficiency, as the Secretary would have it—in enacting § 5121A. *Id.* at 301 (quoting *Breedlove*, 24 Vet. App. at 20). The *Reliford* court's statement that § 5121A permits substitution "for purposes of accrued benefits," *id.* at 302, 304, does not

[8] The Secretary elsewhere suggests that this Court has "rejected the contention" that § 5121A made any fundamental change to the accrued benefits framework. OB37. The Secretary mischaracterizes the case it cites. What this Court held was that § 5121A did not "change[] the definition of 'child' in § 101(4)(A)," and thus did not expand the scope of eligible individuals under § 5121 (or, by incorporation, § 5121A). *Sucic v. Wilkie*, 921 F.3d 1095, 1100 (Fed. Cir. 2019).

undermine the Veterans Court's contrary holding here. The question of what benefits a § 5121A claimant may pursue was not presented in *Reliford*, rendering its statement dicta. *See Nat'l Am. Ins. Co. v. United States*, 498 F.3d 1301, 1306 (Fed. Cir. 2007). And it is not even "persuasive" dicta. *Id.* The suggestion that § 5121A might be limited to "accrued" benefits is inconsistent with the *Reliford* court's clear recognition of the "key" feature of § 5121A: the ability to submit new evidence, which necessarily means the benefits are not "accrued." 27 Vet. App. at 302; *see supra* 44-46.

The Secretary's second argument about supposed legislative intent fares no better. The Secretary draws a distinction between periodic monetary benefits, which it says are "intended to compensate both veterans and their families," and non-periodic benefits, which it says are "personalized to the veteran's disability picture" and apply "without regard to whether [veterans] have dependents." OB28-29. From this supposed difference, the Secretary concludes that "it makes sense" to allow a deceased veteran's dependents to recover periodic benefits, but "it would not make sense" to allow recovery of non-periodic benefits. *Id.*

There are several problems with the Secretary's argument. To start, the premise is simply made up. The Secretary cites generic statements about disability benefits being meant to help not just the veteran but also his dependents, but nothing in those citations is necessarily limited to "periodic" benefits, as opposed to other monetary benefits that are also linked to a veteran's disability.

The Secretary's premise is also demonstrably untrue. VA rightly does not deny service-connected disability benefits to veterans on the ground that they lack dependents. Rather, as the Secretary explains, periodic benefits are primarily calculated based on the effect a disability has on *the veteran's own* earning capacity and capabilities. OB28; *see* 38 U.S.C. § 1114. The fact that veterans may qualify for additional compensation based on their dependents (under §§ 1115 or 1135, for example) does not somehow change the fundamental nature of the benefits system as being directed to the veteran. And these benefits, like any non-periodic benefits, are "personalized to the veteran's disability picture," OB29. *See, e.g.*, 38 U.S.C. § 1114 (setting out a detailed scheme for monthly compensation based on the veteran's

specific disabilities). That does not differentiate the two categories as the Secretary suggests.

Nor is it difficult to see how even non-periodic benefits would assist a veteran's dependents in addition to the veteran. The legislative history discussed above provides one example: a veteran's family stuck paying the cost of housing adaptations because their relative died before the VA approval process could be finalized. *Helping Those Left Behind*, *supra*, 110th Cong. 31. It is not hard to imagine similarly situated veterans, who pay out of pocket for things they urgently need rather than waiting years for VA to process their claims.[9] The Secretary admits (OB30 n.8) that at least some of these expenditures are reimbursable, and that non-periodic benefits are not strictly prospective in nature. *See, e.g.*, 38 C.F.R. §§ 17.158(b) ("VA will reimburse or pay" for adaptive automobile equipment), 36.4402(a)(4) (reimbursement for acquisition of specially adapted housing). The Secretary offers no

---

[9] The appellate record here does not reflect whether Mr. Frazier (or his family) incurred similar expenses that would have been reimbursable by way of the non-periodic benefits he claimed, because the Board dismissed the claims for lack of jurisdiction in view of Mr. Frazier's death. Appx34. Whether any such expenses exist and are reimbursable are appropriate questions for the agency on remand from the Veterans Court.

reason why such reimbursement should be limited to cases where the veteran manages to live through the lengthy claims process, rather than being extended to the substitute claimant who steps into the shoes of the veteran after his death.

Indeed, the availability of reimbursement for at least some non-periodic benefits defeats the Secretary's "absurd result" objection. OB29-32. No one is suggesting that VA must make a hypothetical determination about what assistance a veteran might have needed had he lived, or how much it would have cost. *Contra* OB31 (deeming it "irrational" for VA to conduct "highly individualized investigations into circumstances that no longer exist"). But the fact that some non-periodic benefits will necessarily be unrecoverable after a veteran's death does not support a categorical exclusion that defies statutory text. Where reimbursement would have been possible had the veteran lived to see out the claim, there is nothing "absurd" about affording the same relief to the substitute claimant who steps into his shoes to "process[] the claim to completion," 38 U.S.C. § 5121A. Congress made that choice when it allowed substitution in claims for "any benefit," and VA does

not get to second-guess the legislature's decision because it would prefer a different policy.

The Secretary's "[o]verburden[ing]" concern fails for similar reasons. OB35-37. A substitute claimant cannot add new claims beyond what was pending when the veteran died. *Crews*, 63 F.4th at 40. If a substitute claimant is able to "recover thousands of dollars" in "housing and automobile assistance" (or other non-periodic benefits), OB35-36, it will be because the veteran sought, and was entitled to receive, that benefit. Moreover, VA has the unique ability to minimize the number of claims it must entertain from substitute claimants by addressing the longstanding delays and other problems in its claims-processing systems. Beyond that, as with any party "claim[ing] that a law yields anomalous policy consequences," VA's "recourse lies in Congress, not in the courts where litigants are generally entitled to expect that statues will be 'enforced as written.'" *Feliciano v. Dep't of Transp.*, 605 U.S. ---, 145 S. Ct. 1284, 1296 (2025) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 525 (2018)).

### 4. VA's regulation and manual cannot overcome the plain statutory text.

Finally, the Secretary argues that the Veterans Court should have given more weight to the agency's "longstanding interpretation" of § 5121A "as permitting substitution only in claims for accrued benefits." OB33.

To begin with, no consistent longstanding interpretation exists. VA's regulation does not limit substitution to "accrued benefits"—it limits substitution to "a claim for periodic monetary benefits (other than insurance and servicemembers' indemnity)." 38 C.F.R. § 3.1010(a). The 2010 fast letter does the same, clearly delineating between the type of benefit (periodic) and whether the benefit has "accrued." *See* Addendum A1 ("[B]enefits payable in the case of substitution are the same types of benefits for which accrued benefits are payable, i.e., periodic monetary benefits."). VA's adjudication manual, in contrast, contains two conflicting statements, both of which are inconsistent with the statute. In defining "Substitution," the M21-1 Manual includes the following two notes:

> "The monetary benefit sought in the request for substitution *is accrued benefits*.

> Substitution applies to the same benefits *for which accrued benefits are payable*, i.e., periodic monetary benefits."

VA Adjudication Procedures Manual, M21-1, Part XI, subpart ii, 3.B.1.a (emphasis added). The second "note" is consistent with VA's regulation and fast letter, but inconsistent with § 5121A's reference to "any benefit." The first "note," meanwhile, contains the same mistake as the Secretary's litigation position in this Court: it ignores that an "accrued" benefit is one based on existing ratings, decisions, or evidence, whereas a substitute claimant may submit new evidence on a claim (which therefore has not yet "accrued"). *See supra* 44-46.

Even if the agency had a consistent interpretation, however, and even if an interpretation first expressed in 2010 can be considered "longstanding," no court is bound by that construction. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386-87 (2024). Established agency interpretations "may" be useful to courts interpreting statutes, but they are not decisive; "[o]therwise, judicial judgment would not be independent at all." *Id.* at 386, 394. And VA's interpretations here bear none of the hallmarks of an agency interpretation that might be persuasive to a court. The weight of an agency's interpretive judgment "depend[s] upon the thoroughness evident in its consideration," among

other "factors which give it power to persuade." *Id.* at 388 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Nothing in the fast letter, the rulemaking process, or the M21-1 Manual reflects any consideration—let alone a thorough one—of § 5121A's textual scope. *Contrast Bondi v. VanDerStok*, 604 U.S. ---, 145 S. Ct. 857, 873-74 (2025) (relying in part on agency's multiple interpretations that directly analyzed statutory text, accorded with the plain textual meaning, and had been consistent "for decades").

The Secretary finds it "noteworthy" that no commenter objected to VA's proposed rule limiting substitution to claims for periodic monetary benefits. OB34. But it is not the responsibility of commenters to ensure that VA complies with the law. That obligation lies with the agency. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress.").

## II. The Veterans Court Erred In Imposing An Atextual Limitation On Recovery For Substitute Claimants Like Ms. Frazier.

Because the Veterans Court correctly refused to limit the clear "any benefit" language in § 5121A to only those benefits identified in § 5121, the Court should affirm its first interpretive holding and its invalidation of VA's inconsistent regulation. The Veterans Court went astray, however, in addressing the second statutory interpretation question presented by this case. It agreed with the Secretary that substitute claimants, like Ms. Frazier, whose eligibility derives from § 5121(a)(6)—which refers to "the person who bore the expense of last sickness and burial"—are limited to recovering only the amount of that expense.

That was error. Just as § 5121A's reliance on § 5121 to determine *who* is eligible for substitution does not carry with it the definition of *what* benefits they may pursue, it also does not carry with it any limit on *how much* those individuals may recover. The statute instead provides that whoever substitutes will process the claim to completion. As a substitute steps into the shoes of the original claimant, they are entitled to recover just as the original claimant would. There is no basis

in § 5121A's text to limit the amount certain substitutes may receive, just because their recovery would be limited if they instead pursued a claim for accrued benefits under § 5121. § IIA.

Indeed, the Veterans Court did not perform any textual analysis in reaching this part of its holding. The court instead relied entirely on a supposedly "absurd result" that could occur if the statute were interpreted as Ms. Frazier argued. Appx18. But the hypothetical scenario that the Veterans Court dreamed up does not reflect the facts of Ms. Frazier's case and is highly unlikely to occur in other cases. It certainly cannot justify a reading of § 5121A that is at odds with its plain text and statutory context. § IIB.

Ms. Frazier recognizes that, following the Veterans Court's ruling here, this Court in *Smith* relied on an interpretation of § 5121A to impose the same limitation on (a)(6)-eligible substitutes. 133 F.4th at 1062. Ms. Frazier respectfully suggests that *Smith* was wrongly decided and, pursuant to Federal Circuit Rule 40(a)(4), requests that it be overruled by the en banc Court. The Veterans Court had not reached this statutory interpretation question in *Smith*; instead, the Secretary in his appellee brief urged this Court to dismiss the case on mootness

grounds. 133 F.4th at 1061. The Court thus decided the question without the benefit of either the Veterans Court's views or full briefing on the issue. Perhaps because of this posture, as discussed below (in § IIA), the *Smith* decision provides little to no analysis of relevant statutory-interpretation principles and no clear rationale for holding that § 5121A incorporates not only the identity and priority of individuals who are eligible to substitute as claimants, but also a limit on how much certain of those individuals may recover on any claims they successfully process to completion. This important question of statutory interpretation warrants further consideration by the Court, particularly in view of the Veterans Court's correct recognition of the limits of § 5121A's cross-reference to § 5121.

Properly interpreted, § 5121A permits any substitute claimant—regardless of which provision of § 5121(a) creates their eligibility—to process the claim to completion and recover the amounts that would have been due to the claimant had he lived. VA's attempt to limit that recovery through its regulation, 38 C.F.R. § 3.1010(g)(3), is contrary to the statute and therefore unlawful. *See supra* 46; *Cuozzo*, 579 U.S. at

276; *Manhattan Gen.*, 297 U.S. at 134; *Metro. Area*, 122 F.4th at 1347-48.

### A. There is no textual basis to limit the amount that any substitute claimant may recover on successful claims.

As with the first statutory interpretation question, the analysis on this second interpretive question must begin with the text. Two clauses of § 5121A are relevant here.

First, § 5121A(a)(1) permits substitution by "a living person who would be eligible to receive accrued benefits due to the claimant under section 5121(a) of this title." That clause identifies the universe of potential substitutes—those who fall within the hierarchy of eligibility set out in § 5121(a). The persons who are eligible to receive accrued benefits under that hierarchy vary depending on the identity of the deceased claimant. In a case like this one, where the deceased claimant was "a veteran," the eligible claimant is the "the living person first listed" among "[t]he veteran's spouse," "[t]he veteran's children," or "[t]he veteran's dependent parents." 38 U.S.C. § 5121(a)(2). As another example, if the claimant was a child seeking benefits under chapter 18 of title 38, that child's "surviving parents" are the eligible claimants. *Id.* § 5121(a)(5). And the statute includes a provision governing "all

other cases"—such as where no other eligible claimant would exist—that confers eligibility on "the person who bore the expense of last sickness and burial." *Id.* § 5121(a)(6). The first cross-reference incorporates this universe of potentially eligible § 5121 claimants as the potentially eligible § 5121A substitutes.

Second, § 5121A(b) explains that "[t]hose who are eligible to make a claim under this section shall be determined in accordance with section 5121 of this title." This cross-reference incorporates the priority scheme of § 5121. In other words, it confirms that substitution under § 5121A proceeds according to the same priority chain that governs § 5121. For a deceased veteran, for example, it incorporates the rule that the veteran's spouse is the first eligible claimant, followed by the veteran's children, and the rule that the children become eligible upon the death of the surviving spouse. *See* 38 U.S.C. § 5121(a)(2)-(3).

But neither of these cross-references purports to incorporate any limitation on recovery once an eligible claimant has substituted and the claim is processed to completion. On the contrary, both are clearly limited to the question of "who" may substitute—not "what" benefits claims they may pursue (as shown above) or "how much" of the benefits

ultimately due to the deceased claimant they may receive. Section 5121A(a)(1) is plainly limited to the identity of the possible claimant: "a living person who would be eligible to receive accrued benefits." And § 5121A(b) similarly speaks to determining only "[t]hose who are eligible to make a claim" for substitution. If the person who paid the last sickness and burial expenses of the claimant would be eligible to receive accrued benefits under the hierarchy of § 5121, they are also eligible to substitute as the claimant under § 5121A.

Nothing about the text of § 5121A can fairly be read to incorporate the further limit that, if they choose to make an accrued benefits claim, such individuals may only be "reimburse[d]" the amount they spent on the last sickness and burial. 38 U.S.C. § 5121(a)(6). Section 5121A does not contain this same "reimburse[ment]" language or any similar limitation. And it says nothing about the amount any individual may recover once they have stepped into the shoes of the claimant for whom they are substituting. Just as the Rehabilitation Act provision at issue in *Orozco* did not, by incorporating another provision's "remedies, procedures, and rights," further incorporate that provision's "separate limitations on who can sue," 60 F.4th at 688, § 5121A likewise does not

incorporate § 5121's separate limitation on the monetary recovery available to a particular class of eligible claimants. Section 5121A incorporates the list and hierarchy of those eligible claimants, "and no more." *Orozco*, 60 F.4th at 688.

Again, the Veterans Court provided no textual basis for making such an incorporation. *See* Appx17-18. Nor did this Court in *Smith*. The Court's analysis of § 5121A's cross-reference (again, in the context of a mootness finding) was thin to the point of being conclusory. The Court stated that § 5121A(a)(1) "allows a party … to be substituted so long as the party is eligible under § 5121(a)." *Smith*, 133 F.4th at 1062. After noting that § 5121(a) provides six categories of potentially eligible persons, the Court continued: "And as we determined, Mr. Smith can recover only under subsection (a)(6), which limits recovery to the expenses of last sickness and burial." *Id.* But the Court gave no reason for why that limitation on recovery would be incorporated along with Mr. Smith's identity as an eligible claimant.

The Court also relied on § 5121A(b), stating that this provision "limits recovery of benefits based on the provisions of § 5121(a)." *Id.* But § 5121A(b) does not mention "recovery of benefits" at all. It states

that "[t]hose who are eligible to make a claim under [§ 5121A] shall be determined in accordance with section 5121." Again, that language addresses only the question of who is eligible to seek substitution—not what happens after they substitute, including any limits on recovery.

The Secretary will surely argue that Congress could not have intended to allow substitutes who are eligible only by virtue of § 5121(a)(6) to recover more than the amount they spent on a veteran's last sickness and burial. But there are readily available reasons why Congress might have allowed just that. As in this case and *Smith*, an (a)(6) claimant will often be a veteran's adult child. Indeed, in the course of enacting § 5121A, Congress heard testimony about the importance of including these adult children as eligible claimants—particularly in cases where they may have been minor "children" when their parent's claim started but have grown to adulthood during the long delays of the claims process. *See Helping Those Left Behind*, *supra*, 110th Cong. 30.

Allowing a veteran's grown children to pursue recovery of the benefits the veteran would have been able to receive had he survived the claims process is not absurd. Nor is it absurd to permit others close

enough to have borne the expense of the claimant's last sickness and burial to do so. At most it "may be debatable policy, but it is hardly irrational." *Landstar Express Am., Inc. v. Fed. Mar. Comm'n*, 569 F.3d 493, 499 (D.C. Cir. 2009) (Kavanaugh, J.); *see also, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 28-29 (2003) (statutory interpretation not absurd if Congress could have had a "plausible reason" for its choice, even if it led to "imperfect applications in particular circumstances").

The Secretary may also urge this Court to reject Ms. Frazier's argument on the ground that the Veterans Court deemed it "underdeveloped." Appx17. Even if that were a fair criticism, it should not preclude this Court's review, given that the Veterans Court went on to rule on the merits of the issue. *See* Appx17-18; *Sullivan v. McDonald*, 815 F.3d 786, 789 (Fed. Cir. 2016) ("Veterans Court's legal interpretation is properly before" this Court even where appellant "did not contest the point before that court"); *cf. United States v. Williams*, 504 U.S. 36, 41 (1992) (reciting "traditional rule" of reviewing issues *either* "pressed" or "passed upon" by lower court).

In all events, the argument was not underdeveloped. The Board had not suggested that Ms. Frazier's recovery would be limited to the

amount she spent on her father's last sickness and burial. On the contrary, it granted Ms. Frazier relief on several of her father's pending claims, and remanded another for further development, without suggesting that her ability to receive payment on those claims would be limited in any way. *See* Appx36; Appx38-39; Appx43; Appx45-46. The Board held only that the claims for non-periodic benefits were ineligible for substitution and dismissed them categorically without considering what level of relief might be available if they went forward. Appx34.

Ms. Frazier therefore had no reason to address the monetary limit issue in her appeal brief to the Veterans Court. After the Secretary raised the issue for the first time in a footnote in his response brief, Appx96, Ms. Frazier addressed the question on reply. It is not surprising that she addressed it as part of her overall argument that "the limitations Congress imposed upon accrued benefits claimants *do not* apply when, as here, a qualified individual, an adult daughter who paid her father's funeral expenses, is substituted under § 5121A." Appx107 (arguing further that substituted claimants should be paid "every benefit which the deceased claimant would been entitled to had he or she lived to complete the claim or appeal"). The two statutory

interpretation issues are closely related, as the Secretary himself asserts in relying repeatedly on *Smith* to resolve his own appeal. *See* OB16, 19-20, 22.[10]

Ms. Frazier then addressed the question further in several pages of a supplemental brief that responded to a request from the Veterans Court. She provided an extended analysis of the difference between a claim for accrued benefits under § 5121 and substitution in a pending claim under § 5121A, addressing the statutory text, history, and purpose. Appx130-137. In particular, she emphasized that "[t]he language used by Congress in § 5121A makes no reference to the limitation it imposed in § 5121(a)(6)." Appx133. The absence of such a limitation, Ms. Frazier showed, is consistent with the nature of substitution, in which a claimant steps into the shoes of the claimant and processes the claim to completion. *See* Appx135-136.

The Veterans Court was simply incorrect to deem Ms. Frazier's detailed arguments "little more than a bare conclusion." Appx17. Its

[10] As discussed above (at 68-71), Ms. Frazier does not agree with the Secretary that the two interpretation issues are identical, or that they rise and fall together. Even if *Smith* were correctly decided, it provides no basis to contradict Congress's use of the express phrase "any benefit" in § 5121A.

brief criticism of her argument as "underdeveloped," before proceeding to resolve the merits of that argument, should not deter this Court from reviewing the question and affording § 5121A the meaning its plain text requires.

### B. The policy concern that drove the Veterans Court's misinterpretation is at best far-fetched and, in all events, cannot limit the statutory text.

The Court also should not credit the only rationale the Veterans Court provided for its decision to incorporate the cap on (a)(6)-eligible claimants' ability to recover on any claims they pursue as substitutes under § 5121A.

The Veterans Court suggested that Ms. Frazier was asking the court "to ignore the reason why Congress included subsection (a)(6) in the list of categories of persons eligible to receive a benefit under section 5121." Appx17. But Congress's reason for including that category in § 5121, which provides a mechanism to immediately recover "due and unpaid" benefits upon establishing eligibility as an accrued benefits applicant, does not inherently carry over to its inclusion of the same category in § 5121A, which requires substitute claimants to continue pursuing and developing a pending claim that may (as it has here) take

years more work to see through. The Veterans Court erred in simply assuming that Congress must have had the same purpose for these two different statutes.

From that flawed premise about congressional purpose, the Veterans Court then went even further astray. It theorized that, "[i]f appellant were correct, the very reason for the existence of the (a)(6) category would cease to be." Appx18. The Veterans Court reached that conclusion by imagining "a pay-for-profit substitution scheme" in which some individual, who "need not even be related to a veteran," might pay the veteran's funeral expenses for the sole purpose of being allowed to substitute in pending benefits claims and "recover an unlimited amount under section 5121A." Appx18. Because the Veterans Court "assume[d] Congress did not intend" such an "absurd result," it "read section 5121A to require that a person who is allowed to substitute on the grounds that they bore the expense of a veteran's last sickness and burial is limited by the amount of such expense when allowed to substitute in the deceased veteran's claim." Appx18.

Respectfully, it is the Veterans Court's hypothetical that is "absurd." To engage in such a "scheme," a person would have to know a

veteran was dying or recently dead. They would have to know the veteran had no spouse or other survivor who would receive priority as an eligible substitute claimant. They would have to persuade the veteran's family to allow a stranger to pay the funeral expenses—and presumably any "last sickness" expenses that the veteran's family might have incurred along the way, as well.

Even assuming some industrious schemer got that far, they would run into an even bigger obstacle: they would have to know that the deceased veteran had claims for benefits pending with VA. Given the "sensitive and confidential" nature of a VA claims file, only the veteran, his attorney, or his agent is permitted to access it—and even then, only under strictly limited conditions. *Military-Veterans Advocacy v. Sec'y of Veterans Affs.*, 130 F.4th 965, 968-69 (Fed. Cir. 2025) (discussing restrictions on access to claims files); *see* 38 U.S.C. § 5701(a)-(b) (directing that "[a]ll files … pertaining to any claim under any of the laws administered by the Secretary … shall be confidential and privileged," and providing for disclosure only "[t]o a claimant or duly authorized agent or representative" and in certain other limited circumstances); 38 C.F.R. § 1.577 (VA regulation regarding "Access to

records”). The idea that someone unrelated to a veteran might know about even the existence of the veteran’s claims, let alone know enough about the merits of those claims to make this substitution “scheme” worth the effort, stretches credulity.

And *even if* this hurdle were surmountable, what would the schemer get in exchange for their detective work and their investment of burial fees? The prospect of years of fighting (as the Fraziers have done) to get even meritorious pending benefits claims granted, including developing evidence, appealing adverse decisions, and likely enlisting the help of a lawyer or agent to navigate the process.

If a nefarious actor did manage to pursue this path and reap the “profit” the Veterans Court imagined, Appx18, it is true that the outcome would be permissible under what Ms. Frazier contends is the plain reading of the statute. But the remote possibility of such exploitation does not justify ignoring the choice Congress made when it declined to import the limitation on (a)(6) claimants from the accrued benefits statute into the substitution statute. *See, e.g.*, *N.C. Dep’t of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 14 (1986) (“[I]f one must ignore the plain language of a statute to avoid a possibly

anomalous result, '[t]he short answer is that Congress did not write the statute that way.'") (citation omitted); *Bosco v. United States*, 976 F.2d 710, 714 (Fed. Cir. 1992) ("We will not second guess the wisdom of Congress'[s] [policy] choice and modify the plain meaning of a statute in order to produce what the government deems a wise result.").

## CONCLUSION

The Court should affirm the Veterans Court's holding that § 5121A permits substitution in a claim for "any benefit," reverse the Veterans Court's holding that recovery for substitute claimants whose eligibility is based on § 5121(a)(6) is limited to the expenses of last sickness and burial, and remand for further proceedings.

July 21, 2025

Respectfully submitted,

*/s/ Melanie L. Bostwick*

Melanie L. Bostwick
Anne W. Savin
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 339-8400

Melanie R. Hallums
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Kenneth M. Carpenter
CARPENTER CHARTERED
P.O. Box 2099
Topeka, KS 66601

*Counsel for Claimant-Cross-Appellant*

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(2) because this brief contains 16,484 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Claimant-Cross-Appellant*